***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioners Garner and Baddour and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Crawford and Company is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was 47 years old at the time of the hearing before the Deputy Commissioner. She has a tenth grade education.
2. The plaintiff began working for defendant-employer in 1977. Her last job with the defendant-employer was in the position of spin-draw operator.
3. As a spin-draw operator, the plaintiff operated a machine that ran tire cord and polymer for the defendant-employer's plant. Additionally, the plaintiff was required to doff 28 cakes of yarn weighing between 20 to 50 pounds every 40 minutes to an hour.
4. On May 8, 2001, the plaintiff was driving her vehicle in the defendant-employer's parking lot when another driver, operating one of the defendant-employer's trucks, ran a stop sign and struck the plaintiff's vehicle. The parties stipulate that this automobile collision constituted an accident within the meaning of the Workers' Compensation Act.
5. The plaintiff testified that when the truck hit her car, it was "like a streak of lightning" running from the bottom of her right shoulder up the back of her head. Later that evening, the plaintiff developed a severe headache.
6. Prior to the automobile collision on May 8, 2001, the plaintiff had been treated for a number of years for chronic pain/fibromyalgia. During that time, she continued to work for the defendant-employer. Prior to May 8, 2001, the plaintiff had never missed work for chronic pain/fibromyalgia.
7. Following the accident on May 8, 2001, the plaintiff went to the emergency room at Rowan Regional Medical Center where she complained of a headache and her neck burning. The plaintiff was diagnosed with a cervical strain and told to follow-up with Dr. Myron Goodman within two to three days.
8. Dr. Goodman testified that he saw the plaintiff within two or three days to a week after the accident. In addition to seeing Dr. Goodman, the plaintiff treated with Dr. Jerome Watson and Dr. Robert Wodecki. The plaintiff had previously treated with these physicians for lateral epicondylitis and chronic pain/fibromyalgia.
9. On May 21, 2001, Dr. Wodecki noted that the plaintiff "states she was in a MVA [motor vehicle accident] May 8th and her right shoulder and neck have been hurting and burning ever since."
10. On June 28, 2001, Dr. Watson noted: "apparently she was involved in a MVA on 05/08/01, which seems to have exacerbated her fibromyalgia."
11. On July 16, 2001, Dr. Wodecki noted that the plaintiff had yet to see the anesthesiologist for recommended epidural injections, and took the plaintiff out of work due to persistent pain. Prior to July 16, 2001, the plaintiff had continued to work.
12. On July 20, 2001, the plaintiff saw Dr. Robert Wilson at the Rowan Regional Medical Center Pain Clinic. Dr. Wilson noted a history prior to May 8, 2001, of "myofascial pain and generalized arthritic pains." However, he noted that the "pains that brought her to this clinic relates to a motor vehicle accident that occurred on 05/01." Dr. Wilson went on to note that since "that time she continued to have right neck, shoulder and right arm pain that is gradually getting worse over time." Dr. Wilson diagnosed probable cervical radiculopathy and degeneration and performed both an epidural and trigger point injection.
13. On June 21, 2002, Dr. Wilson released the plaintiff to return to work for four hours per day for two weeks. He assigned additional restrictions of ten-minute breaks every hour for the first two weeks and no overhead lifting and a five to ten pound weight lifting limit.
14. Upon receiving these restrictions, the plaintiff contacted the defendant-employer's plant nurse, Millie Caster. The plaintiff was not offered light-duty work with defendant-employer within her restrictions.
15. Although Dr. Wilson released the plaintiff to return to light-duty work in June 2002, he changed his opinion approximately one month later. As of July 26, 2002, Dr. Wilson testified that the plaintiff was unable to work due to her neck, right shoulder, and right upper arm conditions.
16. Prior to the accident of May 8, 2001, the plaintiff had been treated for diffuse, chronic pain and lateral epicondylitis. These conditions had not prevented the plaintiff from continuing to work.
17. Following the accident of May 8, 2001, the plaintiff was treated for pain specifically in her neck, right shoulder, and right upper arm that was different from the pain she had previously suffered.
18. Based upon the greater weight of the competent medical evidence of record, the Full Commission finds that the plaintiff's neck, right shoulder, and right upper arm conditions were either caused by the accident on May 8, 2001, or are the result of a significant aggravation of a pre-existing condition caused by the accident on May 8, 2001.
19. Based upon the greater weight of the competent medical and other evidence of record, the Full Commission finds that the plaintiff has been temporarily totally disabled from July 16, 2001, through the date of the hearing before the Deputy Commissioner and continuing.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of her employment on May 8, 2001. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the competent evidence of record establishes that the plaintiff's neck, right shoulder, and right upper arm conditions resulted from either a new injury, or an aggravation of a preexisting condition, caused by the accident on May 8, 2001.
3. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation from July 16, 2001, and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. The plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her compensable neck, right shoulder, and right upper arm conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including but not limited to the treatment provided by Dr. Wilson. N.C. Gen. Stat. §§97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay temporary total disability compensation to the plaintiff for from July 16, 2001, and continuing until plaintiff returns to work or until further order of the Commission, subject to the attorney's fee provided herein. The portion of this award that has accrued shall be paid to the plaintiff in a lump sum.
2. The defendants shall pay for medical expenses incurred or to be incurred as a result of the plaintiff's compensable neck, right shoulder, and right upper arm conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including but not limited to the treatment provided by Dr. Wilson.
3. The defendants shall pay a reasonable attorney's fee to the plaintiff's counsel in the amount of twenty-five percent (25%) of the compensation awarded to the plaintiff herein. Fees that are based on the portion of the plaintiff's award that has accrued shall be paid to the plaintiff's counsel in a lump sum; thereafter, the plaintiff's counsel shall receive every fourth check of compensation due the plaintiff.
4. The defendants shall pay the costs due the Commission.
This 3rd day of October 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN